UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| C.F.C.S. INVESTMENTS, LP, and <br> JEWELL A. CLARK, <br><br> Plaintiffs, <br><br> v. <br><br> TRANSAMERICA OCCIDENTAL LIFE <br> INSURANCE COMPANY and <br> MAFG SERVICES, INC,[1] <br><br> Defendants. | Case No. 4:16-CV-00396 JAR |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Transamerica Life Insurance Company, f/k/a Transamerica Occidental Life Insurance Company ("Transamerica")'s Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6), or in the Alternative, To Strike Pleading Pursuant to Rule 12(f) (Doc. No. 12); Defendant MAFG Services, Inc. ("MAFG")'s Motion to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim, and Lack of Subject Matter Jurisdiction (Doc. No. 34); and Plaintiff C.F.C.S. Investments, LP ("CFCS")'s Motion for Substitution of Party (Doc. No. 38). The motions are fully briefed and ready for disposition.[2]

---

[1] Plaintiffs originally named as a party defendant The Beringer Group, LLC, one member of a corporate family of insurance brokers which includes MAFG Services, Inc., Beringer & Company, Strategic Business Advisors, LLC, and BC Advisors, LLC. In their First Amended Complaint ("FAC") (Doc. No. 48), Plaintiffs have named the correct party, MAFG Services, Inc.

[2] Pursuant to the Court's Order of December 14, 2016 (Doc. No. 47), Plaintiffs filed a First Amended Complaint ("FAC") on December 29, 2016, to allege facts showing complete diversity of citizenship among the parties. The parties agree that the Court may consider the pending motions to dismiss as directed to the FAC (Doc. Nos. 49, 50). The Court notes that MAFG did not respond to CFCS's Motion to Substitute Party and the time for doing so has passed.

I.   **Background**

Plaintiffs CFCS and Jewell A. Clark ("Clark"), filed this action against Defendants Transamerica and MAFG, alleging wrongful termination of a $2 million life insurance policy, Policy No. 92543172 ("the Policy"), issued by Transamerica in April 1997.[3] CFCS is the owner of the Policy; MAFG was the broker that procured the Policy; and Clark was the insured (FAC at ¶¶ 7, 8; Doc. No. 13-1 at 2). Clark died on June 13, 2016, and CFCS moves to substitute Clark's son, Michael H. Clark, the named personal representative of her estate, as the proper party plaintiff pursuant to Fed. R. Civ. P. 25(a) (Doc. No. 38).

The Policy required annual premium payments and provided a 31-day grace period if an annual premium payment was not timely paid (FAC at ¶ 14). The Policy also had a procedure for reinstatement of a lapsed policy, so long as reinstatement was requested in writing within five years after the date of lapse (id. at ¶ 17). CFCS timely paid the annual premiums on the Policy through 2010, totaling approximately $487,000.00 (id. at ¶ 20).

Plaintiffs allege that in August 2011, Transamerica informed CFCS that the Policy had lapsed[4] (id. at ¶¶ 29, 36) and then denied CFCS's attempts to reinstate[5] the Policy (id. at ¶¶ 38, 41, 49). According to Plaintiffs, Transamerica and MAFG failed to send correspondence regarding the Policy's grace period and subsequent lapse to the correct address for CFCS, failed to investigate regarding the correct address, failed to reinstate the Policy, and failed to provide a

---

[3] Plaintiffs did not attach a copy of the Policy to their amended complaint, alleging that Transamerica refuses to provide a copy of the Policy to CFCS (FAC at ¶ 13). Transamerica has submitted the Policy with its motion to dismiss (see Doc. No. 13-1). Because the Policy is "necessarily embraced by the complaint," see BJC Health Sys. v. Columbia Cas. Co., 348 F.3d 685, 687 (8th Cir. 2003), the Court can consider the Policy in deciding the instant motions to dismiss.

[4] The Policy defines "lapse" as "termination of the policy at the end of the Grace Period due to insufficient premium or accumulation value." (Doc. No. 13-1 at 14)

[5] The Policy defines "reinstate" as "to restore coverage after the policy has lapsed." (Id. at 15)

copy of the Policy upon request. In Counts I and III of the Complaint, Plaintiffs assert claims for negligence against Transamerica and MAFG. As part of those claims, Plaintiffs allege that Transamerica and MAFG breached their fiduciary duties to Plaintiffs (id. at ¶¶ 51, 62). In Count II, Plaintiffs seek damages against Transamerica for breach of contract, and in Count IV, Plaintiffs request a declaratory judgment against Transamerica concerning the alleged failure to notify Plaintiffs that the Policy had entered the grace period and lapsed and the failure to reinstate the Policy.

## II. Discussion

### A. Standing/CFCS's motion to substitute party

As a threshold matter, Defendants argue that only CFCS, as the owner of the Policy, not Clark, has standing to bring this action. By its terms, the Policy "is a legal contract between … the policy owner [CFCS] and Transamerica." (Doc. No. 13-1 at 1A) Prior to the insured's death, only the policy owner – CFCS – has any rights under the policy (id. at 5) ("Only you, the Owner, are entitled to the rights granted under this policy while the Insured is living."). Courts have consistently held that "[o]nly a policy owner has standing to sue based on an insurance policy." Pike v. New York Life Ins. Co., 72 A.D.3d 1043, 1049, 901 N.Y.S. 2d 67 (N.Y.A.D.2d Dep't 2010); see also Pratt v. Mut. of Omaha Ins. Co., No. 415CV00009DMBJMV, 2016 WL 1248885, at *9 n.18 (N.D. Miss. Mar. 28, 2016); Address v. Millstone, 56 A.3d 323, 333 (Md. 2012) (policy purchaser lacked standing to sue on policies he did not own); Slover v. Equitable Variable Life Ins. Co., 443 F.Supp.2d 1272, 1275 n.2 (N.D. Okla. 2006) ("As the beneficiary of the policy, rather than the owner thereof, Plaintiff ... has no present legal interest in the policy and, therefore, no standing to bring this suit."); Gaidon v. Guardian Life Ins. Co. of Am., 272

A.D.2d 60, 60 (N.Y. Ct. App. 2000) ("Gaidon lacks standing to sue individually, inasmuch as it was not he who purchased the policy.")

CFCS has not responded to Defendants' challenge to Clark's standing (see Doc. No. 37); instead, CFCS has moved to substitute Clark's son, Michael H. Clark, the named personal representative of her estate, as the proper party plaintiff. A substituted party, however, merely "steps into the same position of the original party." Hilao v. Estate of Marcos, 103 F.3d 762, 766 (8th Cir. 1996); Corbin v. Blankenburg, 39 F.3d 650, 654 (6th Cir. 1994); Ransom v. Brennan, 437 F.2d 513, 516 (5th Cir. 1971); 6 Moore's Federal Practice, § 25.15 (Matthew Bender 3d 3d.) If Clark lacks standing to bring this action, then Michael Clark, as personal representative of her estate, likewise has no standing to pursue any claims on behalf of her estate.

Transamerica argues that Clark's death does not confer standing on her estate because after the insured's death, it is the beneficiary who has any rights under the Policy, and CFCS is the beneficiary under the Policy. See Cannon v. Katz Drug Co., 577 S.W.2d 82, 87-88 (Mo. Ct. App. 1978) (finding the widow of a deceased retired employee and beneficiary of his life insurance was the real party in interest in an action to recover damages from his employer for breach of contract to provide group life insurance benefits rather than his personal representative). The beneficiary is designated in the Policy application (Doc. No. 13-1 at 5); however, the application was not submitted with either motion to dismiss.[6] As a result, the Court is unable to determine at this juncture who the beneficiary is under the Policy. On a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, and draws all inferences in its favor. Foster v. Deutsche Bank Nat'l Trust Co., 2012 WL 5285887, at *2

---

[6] According to the Declaration of Gina Tibbits, custodian of records for Transamerica, the application was not submitted because it contains financial and health information not relevant to the instant motion. (Declaration of Gina Tibbits ("Tibbits Decl."), Doc. No. 13-1 at 1-2).

4

(E.D. Mo. Oct. 25, 2012) (citing Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008)). Accordingly, the Court will deny Defendants' motions as to Clark's claims.

Independent of the standing issue, Transamerica argues that CFCS has failed to establish Michael Clark's entitlement to be substituted for his deceased mother. More specifically, Transamerica points to the lack of evidence to establish whether Clark's will is the operative document for administering Clark's estate, whether Michael Clark remained the named personal representative of his mother's estate, whether probate proceedings have been initiated or whether Michael Clark has been duly appointed as the personal representative of his mother's estate (Doc. No. 41 at 4). The Court will defer ruling on CFCS's motion to substitute party for ten days to give Plaintiffs an opportunity to allege a basis for substituting Michael Clark as a party plaintiff.

### B. Transamerica's motion to dismiss or strike pleading

In Count I of the FAC, Plaintiffs assert a negligence claim against Transamerica. Plaintiffs allege Transamerica breached its duties of care and fiduciary duties to Plaintiffs by: (a) failing to obtain CFCS's changed address; (b) making no effort to determine CFCS's changed address, despite having other means of communicating with CFCS; (c) allowing the Policy to lapse without informing CFCS or Clark that the Policy would lapse; (d) failing to conduct any investigation into the correct address for CFCS; (e) refusing to reinstate the Policy; (f) refusing CFCS's demand for a copy of the Policy; and (g) sending correspondence intended for CFCS to its former address (FAC at ¶ 51). Transamerica moves to dismiss Count I on the ground that Missouri law does not recognize a claim for negligence against an insurer (Doc. No. 13 at 4-6). More specifically, Transamerica argues that where an insured's tort claim against its insurer is based on conduct that constitutes a breach of contract, i.e., a company's refusal to pay, the tort

5

claim is not actionable, citing Overcast v. Billings Mut. Ins. Co., 11 S.W.3d 62, 69 (Mo. banc 2000) and Wood v. Foremost Ins. Co., 477 F.3d 1027, 1029 (8th Cir. 2007) (Doc. No. 13 at 5). Plaintiffs respond that Transamerica's argument is unavailing because they are not seeking remediation for failure to pay a claim (Doc. No. 37 at 4-5).

"When applying Missouri law to a situation involving both negligence and breach of contract, the Eighth Circuit has held that, '[u]nder Missouri law, a breach of contract alone does not give rise to a tort. The Missouri courts have recognized a distinction between negligence and nonperformance of a contract obligation.' " Rosemann v. Sigillito, 956 F. Supp. 2d 1082, 1109 (E.D. Mo. 2013) (quoting Pippin v. Hill–Rom Co., 615 F.3d 886, 889 (8th Cir. 2010)). "A mere failure to complete the undertaking required by contract does not give rise to a cause of action in tort; the remedy for such a failure lies in contract." Id. Under these circumstances, a plaintiff must show "negligent misfeasance, such as 'the failure to exercise due care in the performance of contract undertakings, *as distinguished from mere failure to complete such undertakings.*' " Id. (quoting Preferred Physicians Mut. Mgmt. Grp. v. Preferred Physicians Mut. Risk Retention, 918 S.W.2d 805, 814 (Mo. Ct. App.1996) (emphasis in the original)).

After construing the allegations of the amended complaint in the light most favorable to Plaintiffs, the Court finds they have sufficiently alleged a failure to exercise due care resulting in the termination of the Policy. The Court is not reviewing the merits of the claim at this stage of the proceedings. This is a matter to be determined by the evidence after further development of the record.

Alternatively, Transamerica argues that any reference to fiduciary duties in Count I should be stricken because Missouri law does not recognize, as a matter of law, a fiduciary relationship between insurer and insured (Doc. No. 13 at 6-9). Transamerica is correct that as a

general principle, no fiduciary duty exists between an insurer and its insured under Missouri law. Dairy Farmers of Am., Inc. v. Travelers Ins. Co., 292 F.3d 567, 572 (8th Cir. 2002). However, Missouri courts have found that such a duty can arise in certain, albeit "rare," circumstances. See Cuggino v. Nationwide Ins. Co. of Am., No. 4:15-CV-250-CEJ, 2016 WL 233240, at *2-3 (E.D. Mo. Jan. 20, 2016). Upon review, the Court finds Plaintiffs' allegations of breach of fiduciary duties, as set out above, sufficient to survive a motion to strike.[7] See, e.g., Louis Ilfeld Co. v. Union Pac. R. Co., 23 F.2d 65, 69 (8th Cir. 1927) (stating district court is required to take the allegations to be true when considering a motion to strike); see also Stanbury Law Firm, P.A. v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000) (stating motions to strike "are viewed with disfavor and are infrequently granted"). Again, the Court is not reviewing the merits of the claim at this stage of the proceedings.

**C. MAFG's motion to dismiss**

In Count III of the FAC, CFCS asserts a negligence claim against MAFG. CFCS alleges that MAFG breached its duties of care and fiduciary duties to CFCS by: (a) failing to obtain CFCS's changed address; (b) making no effort to determine CFCS's changed address, despite having other means of communicating with CFCS; and (c) allowing the Policy to lapse without informing CFCS or Clark that the Policy would lapse. (FAC at 62). MAFG moves to dismiss the claim for lack of personal jurisdiction and failure to state a claim.

---

[7] In its Opposition to Transamerica's motion, CFCS asserts that Transamerica stands in the position of a fiduciary because the Policy at issue was an investment tool acquired as part of Jewell Clark's estate plan (Doc. No. 37 at 5). A similar argument was made in Koger v. Hartford Life Ins. Co., 28 S.W.3d 405 (Mo. Ct. App. 2000); however, the court in Koger did not reach the issue whether a fiduciary relationship was created by the investment component of the life insurance policies at issue because the petition was "clearly insufficient" to assert a claim for breach of fiduciary duty. Id. at 411. Compare Kroger with Murphy v. Northwest Mut. Ins. Co., No. 03-0864CV-W-HFS, 2005 WL 1421789 (W.D. Mo. June 13, 2005, where plaintiff alleged that defendant insurance agent allegedly acted as an investment advisor and that he reasonably placed his trust and confidence in agent's financial advice concerning his retirement.

7

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591-92 (8th Cir. 2011) (quoting Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004)). "Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." Id. (internal citations and quotation marks omitted). The evidence must be viewed in the light most favorable to the plaintiff and all factual conflicts are resolved in plaintiff's favor in deciding whether it has made the requisite showing. Id. (citing Digi–Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996)).

In support of its motion, MAFG submits an affidavit of Christopher S. Hughes, Chief Financial Officer for MAFG Services (Affidavit of Christopher S. Hughes ("Hughes Aff."), Doc. No. 34-1). According to Hughes, MAFG has always maintained its principal place of business in New Jersey, and is not registered, licensed or otherwise authorized to do business in Missouri. It has never owned real estate in Missouri, and, since December 31, 1999, has not had an office, address, telephone number or bank account in Missouri; none of its employees or representatives work or live in Missouri (id. at ¶¶ 6-10, 13-15). Hughes states that since December 31, 1999, MAFG has not purposefully directed any advertisements to Missouri and has sold products or services to fewer than five Missouri residents (id. at ¶¶ 11-12).

CFCS responds that MAFG directed its activities at Missouri residents and that those activities clearly relate to its cause of action. More specifically, CFCS argues that when the Policy was purchased in 1997, MAFG had an office, bank account, and employees or

representatives in Missouri. At that time, MAFG was also purposefully soliciting or advertising in Missouri and selling products and services in Missouri. CFCS asserts that MAFG continues to sell products and services in Missouri. (Doc. No. 45 at 4)

MAFG replies that any contacts it had with Missouri in 1997 are outside the time period relevant to the issue of personal jurisdiction,[8] citing Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 562 (8th Cir. 2003) ("Minimum contacts must occur at the time the cause of action arose, the time the suit is filed, or a reasonable period of time immediately prior to the filing of the lawsuit.") (Doc. No. 46 at 3). MAFG argues that any contact it had with Missouri in 1997 while procuring the Policy does not relate to this cause of action and that any duties it had relative to procuring the Policy were extinguished once the Policy was delivered (in Missouri).

The Court finds CFCS has alleged sufficient facts to support a reasonable inference that MAFG can be subjected to jurisdiction within this state. K-V Pharm., 648 F.3d at 591-92. In 1997, MAFG acted as a broker for CFCS, a limited partnership with its principal place of business in Missouri, to procure the Policy on the life of Jewell Clark, a Missouri resident. Thereafter, MAFG became the servicing broker[9] for the Policy, with continuing duties and obligations related to the Policy. In particular, Plaintiffs allege that MAFG was paid a

---

[8] The Supreme Court has never directly addressed the issue of the timing of minimum contacts in any of its personal jurisdiction decisions, which has resulted in confusion among lower courts about how to apply the minimum contacts test when significant time has elapsed between the occurrence of the minimum contacts and the filing of a lawsuit. See Todd David Peterson, The Timing of Minimum Contacts, 79 Geo. Wash. L. Rev. 101 (2010); Mammen, Here Today, Gone Tomorrow: The Timing of Contacts for Jurisdiction and Venue Under 28 U.S.C. § 1391, 78 Cornell L. Rev. 707 (1993). There are a number of specific jurisdiction cases in the Eighth Circuit that, without extensive analysis, cite Clune v. Alimak AB, 233 F.3d 538, 541 (8th Cir. 2000) (and the following line of cases), an Eighth Circuit decision involving general jurisdiction and a stream of commerce theory for specific jurisdiction, for the conclusion that "minimum contacts must occur at the time the cause of action arose, the time the suit is filed, or a reasonable period of time prior to the filing of the lawsuit." Peterson, 79 Geo. Wash. L. Rev. 101.

[9] In reply, MAFG argues that CFCS fails to explain the role of a "servicing broker" or how that role created a duty on the part of MAFG (Doc. No. 46 at 8). This is a matter to be determined by the evidence.

commission and benefitted from CFCS owning the Policy and paying the premiums over a ten-year period. Moreover, it is certainly foreseeable that a claim on the Policy would be filed. See 16 Moore's Federal Practice § 108.42[2][b] (Matthew Bender 3d ed.) (suggesting that the single act of issuing and or delivering to a resident a contract insuring the life of the resident – and the collection of premiums for such contracts – can be sufficient to support jurisdiction).

MAFG further argues that CFCS fails to state a claim because MAFG owed no duty to CFCS in 2011 when the Policy lapsed; any duty owed by an insurance broker to a policyholder ceases once the policy is delivered (Doc. No. 35 at 9-13). While an insurance broker's duty is to exercise reasonable care, skill and diligence in procuring the requested insurance, the nature of that duty may vary depending on the relationship of the parties and any agreements between them. Allstate Indem. Co. v. Dixon, No. 6:14-CV-03489-MDH, 2015 WL 6150586, at *1 (W.D. Mo. Oct. 19, 2015) (citing Emerson Elec. Co. v. Marsh & McLennan Companies, 362 S.W.3d 7, 19-20 (Mo. 2012); Manzella v. Gilbert-Magill Co., 965 S.W.2d 221, 227 (Mo. Ct. App. 1998)); see also Zeff Distributing Co. v. Aetna Cas. & Sur. Co., 389 S.W.2d 789, 795 (Mo. 1965). As such, it would be premature for the Court to determine on a motion to dismiss, as opposed to a motion for summary judgment, whether CFCS is entitled to relief as a matter of law. Again, this will be developed on the evidence. MAFG's motion to dismiss for lack of personal jurisdiction and failure to state a claim will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Transamerica Life Insurance Company's Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6), or in the Alternative, To Strike Pleading Pursuant to Rule 12(f) [12] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant MAFG Services, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim, and Lack of Subject Matter Jurisdiction [34] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff C.F.C.S. Investments, LP is granted ten (10) days from the date of this Order to supplement its Motion for Substitution of Party [38] with facts establishing a basis for substituting Michael Clark as a party plaintiff. The Court will thereafter rule on Plaintiff CFCS's motion.

**IT IS FINALLY ORDERED** that a Rule 16 conference will be set by separate Order.

Dated this 23rd day of January, 2017.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**